**UNITED STATES of America**

**v.**

**Thomas Anthony CERASO et al.**

**Crim. No. 14927.**

United States District Court,
M. D. Pennsylvania.

Feb. 26, 1973.

Raymond E. Makowski, Dept. of Justice, Philadelphia, Pa., for the United States.

Thomas Hanlon, Scranton, Pa., for defendant Frank Casale.

Michael J. Casale, Williamsport, Pa., for defendant Joseph M. Casale.

Anthony D. Miele, Williamsport, Pa., for defendant Lloyd Bosch.

## OPINION

MUIR, District Judge.

 Defendants Frank Casale, Joseph M. Casale and Lloyd Bosch have moved to suppress evidence derived from a wiretap conducted in February, 1971. Their motion is based on two unusual circumstances in this case: an unsigned order of authorization for a prior wiretap, and a possibility that the prior tap may have impermissibly tainted the February, 1971 tap. Although the court agrees with Defendants that° the prior tap was illegal, their motion will be denied because they have not proven that the February, 1971 tap was a product of that illegality. The court will deny the motion as to Defendant Bosch for the additional reason that he lacks standing to challenge the prior tap because he does not claim to be a party to any communication intercepted during that tap, a person against whom the interception was directed, or a person upon whose premises the conversations occurred.[1]

 The illegal tap mentioned above occurred in May, 1970. It was the subject of a suppression motion in United States v. Leta, 332 F.Supp. 1357 (M.D.Pa.1971). When the government began presenting its evidence at the trial in that case, the fact that the order of authorization under which the tap had been conducted was unsigned came to light for the first time. Following a hearing, the undersigned judge ordered suppression of the contents of the tap and the evidence derived from it.[2] The government did not appeal from that order. It chose not to proceed and a judgment of acquittal was entered in the

---

1. 18 U.S.C. § 2510(11); Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969).

2. Order dated November 8, 1971; see 18 U.S.C. § 2515; 18 U.S.C. § 2518(10)(a)(ii).

*Leta* case. The order of suppression is therefore final, but in my view is not automatically controlling here. Because the moving Defendants in this case were not defendants in the *Leta* case, the government is not estopped from now asserting that the May, 1970 wiretap was legal. Had the court previously found the *Leta* tap legal, these Defendants would not be estopped from asserting its illegality here. One who is not bound by a decision may not claim its benefits.[3]

█ Although my prior ruling is not binding in this case, I now reaffirm it. The circumstances leading to the illegality appear to be unique. The difficulty began when the judge who was requested to authorize the May, 1970 tap was presented with five documents bound under one cover. Four of the five documents required his signature. He signed three of these four, including an order sealing and impounding the following: the application, the letter of authorization, an affidavit of an F.B.I. agent, and the order of authorization. He has stated in an affidavit that his omission to sign the authorization order was due to oversight and that he thought at the time that he had properly authorized the wiretap. The government contends that this affidavit indicates that "he issued and intended to issue an Order on May 1, 1970 for the interception of oral communications and inadvertently neglected to manifest the issuance of this order and his intent by

placing his signature on the Order." [4] Although it is clear that the omission was inadvertent, it does not follow that the Order was in fact issued. An unsigned written order is simply not effective as an order. No one would be expected to follow any command in such an order. Since the wiretap here was conducted pursuant to an order which was insufficient on its face, any aggrieved person is entitled to suppression of the contents of the tap and any evidence derived from it.[5]

█ The government asserts that the failure to sign the authorization order was a clerical mistake, that the judge's affidavit of intent to sign and belief that he had signed should be viewed as a *nunc pro tunc* order, and that under F. R.Crim.P. 36,[6] such an order effectively rectifies the error in the authorization order. This argument fails for the obvious reason that an affidavit is not an order. Furthermore, I have some doubt that a nunc pro tunc order can validate an unsigned order. As the government contends, the court has the power to correct clerical errors in orders. But in my opinion, the omission of a signature is not clerical in nature. A clerical mistake is an error in copying or writing committed by a clerk, a copyist or one performing the functions of a clerk.[7] An error in a date is a typical example of a clerical error.[8] Other errors in the preparation of orders for a judge's signature will frequently be clerical mistakes.[9] The actual signing of an or-

3. See Restatement of Judgments, § 93(b).

4. Government's Memorandum of Law, filed December 20, 1972, at 5.

5. 18 U.S.C. § 2518(10)(a)(ii).

6. Criminal Rule 36 reads as follows:
 "Clerical mistakes in judgments, orders or other parts of the record and errors in the record arising from oversight or omission may be corrected by the court at any time and after such notice, if any, as the court orders."

7. See Webster's Third New International Dictionary, Unabridged, at 421. Oxford English Dictionary, Vol. 2 at 492.

8. See, e. g., United States v. Sklaroff, 323 F.Supp. 296, 316 (S.D.Fla.1971); Dudley v. United States, 320 F.Supp. 456, 458 (N.D.Ga.1970); United States v. Matellian, 31 F.R.D. 233, 234 (D. Mass.1962).

9. United States v. Poeta, 455 F.2d 117 (2d Cir. 1972); United States v. Sapp, 439 F.2d 817 (5th Cir. 1971); United States v. Dandridge, 437 F.2d 1324 (7th Cir. 1971), cert. denied 403 U.S. 934, 91 S.Ct. 2263, 29 L.Ed.2d 713; United States v. Averell, 296 F.Supp. 1004 (E.D.N.Y. 1969).

der, on the other hand, is never performed by clerks or copyists, but only by judges. Hence a failure to sign an order is not a clerical error.

 Having determined that the May, 1970 tap was illegal, the remaining issue is whether the February, 1971 tap was derived from it. This issue turns on the degree to which the May tap was the source of the information contained in the affidavit upon which the judge who authorized the February tap relied in finding probable cause. The affidavit mentions the May, 1970 tap only as corroborative of the major portion of the affidavit, the information supplied by three informants. "The inclusion of illegally obtained evidence does not vitiate a search warrant which is otherwise validly issued upon probable cause reflected in the affidavit and based on proper sources."[10] Defendants question the propriety of the other sources here; i. e., they assert that F.B.I. agents who listened to the contents of the tap may have been inspired thereby to direct the informants to contact Defendants and other persons named in the affidavit for the February, 1971 tap. In support of their assertion, Defendants note that two of the five persons named in the affidavit were overheard discussing gambling on the wires which were tapped in May, 1970. Defendants are charged with illegal gambling in this case. Defendants also point out that the affiant does not indicate that any of the information he relates was known to the F.B.I. prior to May, 1970, or that any of the actions of the informants took place prior to May, 1970. Most of the material is dated December, 1970 or January, 1971,

an unsurprising state of affairs since the probable cause for a warrant must be fresh. The remaining matters are undated and frequently of unspecified duration.

 While conceding that the affidavit does not preclude the interpretation urged by Defendants, the government rests its case on the fact that the affidavit does not reveal any actual connection between the May, 1970 tap and the information supplied by the informants. At a hearing on Defendants' motion to suppress, the parties chose not to introduce any evidence to attempt to resolve the ambiguity of the affidavit. Thus the determination of whether there was impermissible taint turns on who has the burden of proof in this situation.

Where there has been an illegal search, the government has the ultimate burden of persuasion to show that its evidence has been obtained by means sufficiently distinguishable from the illegality as to be purged of the primary taint.[11] However, the Defendants have a burden of production: they must first come forward "with specific evidence demonstrating taint,"[12] and such taint must extend to a "substantial portion" of the evidence.[13] In my view, Defendants have failed to sustain this burden. The affidavit does not preclude speculation that the bulk of the affidavit, the information from the informants, is tainted, but it also does not contain specific evidence of such taint. Defendants contend that in order to attempt to meet their burden, they must be advised of the identity of the informants. They rely on Roviaro v. United States, 353 U.

10. United States v. Sterling, 369 F.2d 799, 802 (3d Cir. 1966); see also Howell v. Cupp, 427 F.2d 36 (9th Cir. 1970); James v. United States, 135 U.S.App. D.C. 314, 418 F.2d 1150 (1969); Clay v. United States, 246 F.2d 298 (5th Cir. 1957); United States v. Iannelli, 339 F. Supp. 171 (W.D.Pa.1972).

11. Alderman v. United States, 394 U.S. 165, 183, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969).

12. Id. See Nardone v. United States, 308 U.S. 338, 341, 60 S.Ct. 266, 84 L.Ed. 307 (1939); United States v. Nolan, 420 F.2d 552, 554–555 (5th Cir. 1969); United States v. Paroutian, 299 F.2d 486, 489 (2d Cir. 1962); United States v. Ivanov, 342 F.Supp. 928, 937 (D.N.J. 1972); United States v. Annoreno, 321 F.Supp. 957, 958 (N.D.Ill.1971).

13. Nardone v. United States, 308 U.S. 338, 341, 60 S.Ct. 266, 84 L.Ed. 307 (1939).

S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). There the court stated that while an informant's identity is generally privileged information, "[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." [14] Although this language is broad enough to encompass Defendant's position, a later case indicates that *Roviaro* is to be limited to its facts; i. e., to the situation where the informant has played a direct and prominent part in the offense charged.[15] In the case at bar, the informants played only a minor part in the alleged offense. In my view, the public's interest in protecting the free flow of information from informants outweighs the interest of the Defendants in this particular case in trying to trace the contamination from the May, 1970 tap to the informants.[16] Hence Defendants are not entitled to be informed of the informants' identities.

This result would obtain even if there had been no way for Defendants to have met their initial burden of showing specific evidence of substantial taint without knowledge of the informants' identities. Here, however, Defendants failed to avail themselves of an opportunity to try to sustain their burden. The F.B.I. agent who was the affiant for both the May, 1970 tap and the February, 1971 tap, and who was in charge of the investigations of which each tap was a part, was present at the suppression hearing. Defendants could have questioned him and attempted to discover, for example, when the F.B.I. began their surveillance, which F.B.I. agents listened to the contents of the May, 1970 tap, and whether, to his knowledge, any of the informants were directed towards Defendants' activities as a result of that tap.

Since Defendants have failed to sustain their burden of showing specific evidence of substantial taint, an order denying their motion to suppress will be entered.

14. 353 U.S. at 60–61, 77 S.Ct. at 628.

15. Rugendorf v. United States, 376 U.S. 528, 534–535, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964); see United States v. Herrera, 455 F.2d 157, 158 (5th Cir. 1972).

16. See Roviaro, 353 U.S. at 62, 77 S.Ct. 623.