**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**John MARTINEZ, Defendant-
Appellant.**

**No. 73-1740.**

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 10, 1973.

Decided June 18, 1974.

---

Louis Martinez, Canton, Ohio, for defendant-appellant.

Leonard A. Sands, U. S. Dept. of Justice, for plaintiff-appellee; Frederick M. Coleman, U. S. Atty., David Margolis, Sp. Atty., U. S. Dept. of Justice, Cleveland, Ohio, on brief.

Before PHILLIPS, Chief Judge, and EDWARDS and LIVELY, Circuit Judges.

LIVELY, Circuit Judge.

John Martinez was found guilty on two counts of an indictment charging him with violation of 18 U.S.C. §§ 1084 and 1952, illegal use of interstate telephone facilities to carry on unlawful gambling activities. No issue is made as to the sufficiency of the evidence or of rulings on evidentiary matters during the trial. Therefore, no purpose would be served by a recitation of the facts disclosed by the trial transcript. It is maintained on appeal, however, that there are three distinct reasons why the conviction must be reversed. These matters will be considered separately.

### The Speedy Trial Issue

■ Appellant maintains that he was denied his Sixth Amendment right to a speedy trial. An indictment was returned on April 2, 1970 charging Martinez and 14 others with violation of 18 U.S.C. §§ 1084 and 1952 and with conspiracy. Between the date of the indictment and May 18, 1972 thirteen of the original fifteen defendants pled guilty. On May 18, 1972 Martinez and one other person were charged with the same crimes in a superseding indictment. Subsequently the co-defendant in the superseding indictment pled guilty and Martinez was the only person actually tried on either indictment. The original indictment was

dismissed by the government at the time that the trial of Martinez began under the superseding indictment. The trial began on November 27, 1972, which was nearly 32 months after the original indictment was returned.

The reasons for delay in bringing appellant's case to trial are not apparent from an examination of the record. So far as the record discloses, the government never made a motion for continuance and appellant never sought to have his case set for trial. The minutes of a pretrial hearing held on February 11, 1971 show that no motions were pending at that time. On May 3, 1971 there was a motion for continuance by one of the co-defendants and there is no indication that the motion was opposed by the government or any of the other defendants. Martinez was free on bail during the entire period that his case was pending. On November 27, 1972, the date that his trial began, defendant orally moved the court to dismiss the charges for failure to provide him with a speedy trial.

Appellant cites Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). In that case the Supreme Court rejected a rule which would require that the defendant either demand a speedy trial or forever waive the right to raise the issue. The Court held, however, that a defendant has some responsibility to assert a claim for a speedy trial, but placed ". . . the primary burden on the courts and the prosecutors to assure that cases are brought to trial." 407 U.S. at 529. The Court specifically adopted "a balancing test." It also identified four factors among those which should be considered by a court in determining an issue of speedy trial and concluded that such cases must be approached on an *ad hoc* basis. We have considered these four factors. Admittedly the length of delay was quite great in the present case. However, a complex conspiracy was originally charged, and the various maneuverings which eventually led to guilty pleas by 14 of those indicted were necessarily time consuming. Although appellant has claimed prejudice

by reason of the delay in bringing his case to trial, this was done in most general terms without any supporting proof. While it was claimed that a witness who would have been helpful to him died during the pendency of the case, no attempt was made to show what the testimony of this witness would have been. Likewise, the defendant complained of the uncertainty of living under a cloud for this period of time, but he did not offer proof of any measurable damage which flowed from it. In concluding that the appellant John Martinez was not deprived of a constitutional right by the delay complained of, we particularly note that he did not file a motion to suppress wiretap evidence until July 21, 1972. Since he was convicted largely on the basis of evidence obtained by a telephone intercept order and had known of the existence of this evidence since early 1970, the fact that he waited until July 1972 to seek to have such evidence suppressed indicates that he was not overly concerned with getting his case to trial during the first two years of its pendency. Applying the balancing test mandated by the Supreme Court, we find that the circumstances of this case do not justify a dismissal of the charges against appellant because of the delay which occurred between the date of his first indictment and the beginning of trial on the superseding indictment.

### The Wiretap Authorization

█ The appellant contends that the Department of Justice failed to follow the prescribed procedures under Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2520, for obtaining authorizations to tap certain telephones and intercept communications. Specifically he maintains that the procedures set forth in 18 U.S.C. § 2516 for authorization of an application to a federal judge for an order authorizing or approving a wiretap and the procedure set forth in 18 U.S.C. § 2518 for obtaining such an order were not followed.

Two separate orders were issued by the chief judge of the United States District Court for the Northern District of Ohio authorizing FBI agents to intercept wire communications of a named person "and others as yet unknown" to and from telephones described by their numbers. A lengthy affidavit which had been executed by an FBI agent familiar with the activities of the person named in the application as the user of the designated telephones accompanied each application. Since evidence from the October 22 wiretap order only was introduced, we confine ourselves to consideration of that order. Assistant Attorney General Will Wilson was identified as the officer who had authorized the application. The application and its exhibit indicated to the district judge that the authorization procedures prescribed by 18 U.S.C. § 2516 (1) and 18 U.S.C. § 2518(1) had been precisely followed. However, Martinez challenged the procedure which the government used, maintaining that there was doubt that either the Attorney General or a specially designated assistant attorney general had in fact authorized the application. In responding to this, the government revealed by affidavit that Assistant Attorney General Will Wilson had never examined the request for authorization, but that it had been examined in a special unit within the Department of Justice by attorneys whose primary function was to scrutinize such requests ". . . with particular emphasis on assuring strict adherence to the required statutory, judicial and Constitutional standards." After several reviews the request was forwarded to the "Office of the Attorney General with a detailed recommendation that the authorization be granted." The affidavit of Henry E. Petersen, who was then a deputy assistant attorney general, stated that after the application had been approved "in the Office of the Attorney General," he signed Will Wilson's name to the letter to the requesting attorney authorizing him to make application to a federal judge for an interception order.

This letter, bearing the name and apparent signature of Will Wilson, but actually prepared somewhere in the Criminal Division of the Department of Justice and signed by Petersen with Wilson's name "as a ministerial act" was filed with the district judge along with the application.

No affidavits were filed by former Attorney General John N. Mitchell. However, Sol Lindenbaum, who was the Executive Assistant to the Attorney General, both at the time the request in question was processed and at the time of the hearing on the motion to suppress, filed an affidavit in which he stated that Attorney General Mitchell approved the request for authorization to make application for interception orders concerning the telephones involved in this case and he attached copies of a memorandum prepared by the Attorney General addressed to Will Wilson reflecting his favorable action on the request. Near the top of the memorandum appeared the initials "JNM." After identifying the particular request for an application, the memorandum concluded with the following language:

> Pursuant to the powers conferred on me by Section 2516 of Title 18, United States Code, you are hereby specially designated to authorize [the requesting attorney] to make the above-described application.

Congress required that each application for an order and each order authorizing or approving the interception of wire or oral communication identify the officer authorizing the application. 18 U.S.C. § 2518(1)(a) and (4)(d). Where disclosure of information would be a violation of the Act, § 2515 prohibits use of evidence in certain proceedings. Furthermore, § 2518(10)(a) provides for motions to suppress the contents of any intercepted communication, or evidence derived therefrom, on the following grounds:

> (i) the communication was unlawfully intercepted;

> (ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or

> (iii) the interception was not made in conformity with the order of authorization or approval.

The issues presented in this case were decided by the Supreme Court in United States v. Chavez, 416 U.S. 562, 94 S.Ct. 1849, 40 L.Ed.2d 380, 42 U.S.L.W. 4660 (decided May 13, 1974). On facts similar to those disclosed by this record, suppression of wiretap evidence was held not justified. In view of the fact that the Attorney General approved the application, the misidentification of the officer authorizing it was held not to render the order "unlawful" within the meaning of 18 U.S.C. § 2518(10)(a)(i). The Court further held that the misidentification "did not affect the fulfillment of any of the reviewing or approval functions required by Congress and is not within the reach of paragraphs (ii) and (iii) [of 18 U.S.C. § 2518(10)(a)]." [94 S.Ct. at 1856]. The provisions of § 2515 do not require suppression under the circumstances of this case. The district court correctly denied the motion to suppress.

### The Constitutionality of Title III

■■ Appellant contends that Title III offends the First, Fourth and Fifth Amendments to the Constitution of the United States. He further maintains that electronic surveillance is unconstitutional per se, and that wiretapping can never constitute a reasonable search within the meaning of the Fourth Amendment. The issue of per se unconstitutionality of electronic surveillance was settled by the Supreme Court in Katz v. United States, 389 U.S. 347, 354–355, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), where it was held that a magistrate with proper information may constitutionally authorize a surveillance by wiretap under given conditions. See also Osborn v. United States, 385 U.S. 323, 329–330, 87 S.Ct. 429, 17 L.Ed.2d 394 (1966).

Though the New York "Eavesdropping Law" was held unconstitutional in Berger v. New York, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967), in pointing out the deficiencies of the New York statute the Court indicated the requirements for a constitutional electronic surveillance law. It is clear that Congress gave careful consideration to the opinions in *Osborn, Berger* and *Katz* in drafting 18 U.S.C. §§ 2510–2520, Title III of the Omnibus Crime Control and Safe Streets Act of 1968.

■ A number of courts have considered Title III in the context of claims of unconstitutionality similar to those made by the appellant in this case. We agree with those courts which have held·that the provisions of Title III which permit limited electronic surveillance to be conducted under strict judicial supervision satisfy the requirements of the Constitution. See United States v. Bobo, 477 F.2d 974 (4th Cir. 1973); United States v. Cafero, 473 F.2d 489 (3rd Cir. 1973); United States v. Cox, 462 F.2d 1293 (8th Cir. 1972); United States v. Cox, 449 F.2d 679 (10th Cir. 1971), cert. denied, 406 U.S. 934, 92 S.Ct. 1783, 32 L.Ed.2d 136 (1972).

■■ Appellant specifically contends that Title III does not provide adequate notice to those affected by a wiretap order to satisfy the Fourth Amendment. To require that affected persons be given notice prior to the commencement of electronic surveillance would render all such surveillance totally ineffective. The Fourth Amendment does not require prior, or even contemporaneous, service of a conventional search warrant. United States v. McKenzie, 446 F.2d 949, 954 (6th Cir. 1971). As the Supreme Court pointed out in Katz v. United States, *supra,* neither the Fourth Amendment nor the Federal Rules of Criminal Procedure impose "an inflexible requirement of prior notice." 389 U.S. at 355–356, n. 16. We believe that the provisions of 18 U.S.C. § 2518(8)(d) which direct that an inventory be served upon the persons named in the order and others affected by it satisfy the Fourth Amendment requirement of notice.

■ Appellant further contends that the due process provisions of the Fifth Amendment are violated by the interception and use of communications of a person not named in the application or order. The record indicates that appellant's indentity was known to the FBI prior to the time that the authorization was sought and that something was known of his contacts with the only person named in the application. The application sought authorization "to intercept wire communications of Raymond Paul Vara and others as yet unknown. . . . ." The government maintains that although it knew of appellant's existence at the time the application was made, he was included in the phrase "others as yet unknown" because at that time it was not known that he was using a telephone for an illegal purpose. Appellant lived in Las Vegas and the telephones which were tapped were in Ohio.

In United States v. Kahn, 415 U.S. 143, 94 S.Ct. 977, 39 L.Ed.2d 225, 42 U.S.L.W. 4245 (decided February 20, 1974), the Supreme Court held that the government is not required to conduct a thorough investigation to learn the identity of every person who is likely to use a telephone for illegal activities before applying for an order authorizing interception of communications over the particular instrument. The term "as yet unknown" may properly be applied to persons whose identity is known, but who the government has no probable cause to believe are involved in illegal use of communication facilities. Although Martinez was known as an acquaintance of Vara, his role in the interstate transmission of forbidden gambling information was first discovered by the interception of calls over the Vara telephone. Under these circumstances, he was not entitled to have the evidence suppressed for failure to name him in the application and order.

The judgment of the district court is affirmed.