UNITED STATES of America,
Plaintiff-Appellee,

v.

Dennis J. WAC, Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Al V. RAFTI, Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Donald VAN GUNTEN, Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

William Paul SCOTT et al.,
Defendants-Appellants.

UNITED STATES of America,
Plaintiff-Appellee,

v.

George ANTON, Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

John VITANTONIO, Defendant-Appellant.

Nos. 73-1588 to 73-1593.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 4, 1973.

Decided June 20, 1974.

**1228**

Norman G. Zemmelman and Gerald S. Lubitsky, Toledo, Ohio, for defendants-appellants; Britz & Zemmelman, Harland M. Britz, Toledo, Ohio, on brief for William Paul Scott, William Joseph Scott, Madeline Scott, Ernest Sarno and Thomas Clark; John J. Callahn, Toledo, Ohio, on brief, for Dennis Wac; Allan J. Chabler, Toledo, Ohio, on brief, for Al V. Rafti; Gerald S. Lubitsky, Toledo, Ohio, on brief, for John Vitantonio; Marshall R. Desmond, Toledo, Ohio, on brief, for George Anton; William M. Culbert, Toledo, Ohio, on brief, for Donald Van Gunten.

Frank A. Justen, Asst. U. S. Atty., for plaintiff-appellee; Frederick M. Coleman, U. S. Atty., Toledo, Ohio, on brief.

Before PHILLIPS, Chief Judge, and PECK and LIVELY, Circuit Judges.

LIVELY, Circuit Judge.

This is an appeal from convictions under a single count indictment charging violations of 18 U.S.C. § 1955 and 18 U.S.C. § 2. Eighteen persons were named in the original indictment, and four were found not guilty. Four of the remaining fourteen who were convicted have not appealed. The appeals of the ten remaining defendants have been consolidated and were heard together. The case concerns the handling of bets by persons in the Toledo area and involves athletic and sports events which took place throughout the country. The court tried the case without a jury. No purpose would be served by a detailed recitation of the evidence contained in the transcript. The questions presented on appeal were first raised by way of preliminary motions in the trial court and were properly preserved for consideration here.

### The Constitutionality of 18 U.S.C. § 1955

The defendants maintain that the statute under which they were convicted is unconstitutional as applied to them because the evidence does not show that their gambling operation had any effect on interstate commerce. The statute reads in part as follows:

#### § 1955. Prohibition of illegal gambling businesses

(a) Whoever conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business shall be fined not more than $20,000 or imprisoned not more than five years, or both.

(b) As used in this section—

(1) "illegal gambling business" means a gambling business which—

(i) is a violation of the law of a

State or political subdivison in which it is conducted;

(ii) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and

(iii) has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day.

(2) "gambling" includes but is not limited to pool-selling, bookmaking, maintaining slot machines, roulette wheels or dice tables, and conducting lotteries, policy, bolita or numbers games, or selling chances therein.

(3) "State" means any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, and any territory or possession of the United States.

(c) If five or more persons conduct, finance, manage, supervise, direct, or own all or part of a gambling business and such business operates for two or more successive days, then, for the purpose of obtaining warrants for arrests, interceptions, and other searches and seizures, probable cause that the business receives gross revenue in excess of $2,000 in any single day shall be deemed to have been established.

Although this court has not been called upon to decide the constitutionality of § 1955 on this particular ground, the same challenge was made in United States v. Aquino, 336 F.Supp. 737 (E.D.Mich. 1973). There Judge Kennedy concluded that the statute is constitutional in that it deals with a class of activities which affects interstate commerce and it is not essential that any particular intrastate activities of a particular person or group of persons within the prohibited class of activities actually be shown to have an effect on commerce. Judge Kennedy reached this conclusion on the basis of an analysis of the Supreme Court decisions in Perez v. United States, 402

U.S. 146, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971), and United States v. Darby, 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. 609 (1941). We are in agreement with the result and reasoning of United States v. Aquino, *supra*, and hold that § 1955 is not an unconstitutional attempt at federal regulation of purely intrastate activities.

It is contended that § 1955(c) is unconstitutional in that the presumption created therein is without a rational basis. This court has dealt with this argument in two recent cases and has rejected the contention of the defendants herein. We adhere to our decisions in United States v. Palmer, 465 F.2d 697 (6th Cir.), cert. denied, 409 U.S. 874, 93 S.Ct. 119, 34 L.Ed.2d 126 (1972); and United States v. DiMario, 473 F.2d 1046 (6th Cir.), cert. denied, 412 U.S.907, 93 S.Ct. 2298, 36 L.Ed.2d 972 (1973).

■ It is also claimed that § 1955(c) is unconstitutional in that the presumption contained in it is a "watering down" of the Fourth Amendment requirements of probable cause. This argument assumes that probable cause to issue a warrant or interception authorization may be based on the presumption of § 1955(c) alone. This is not correct. Upon a showing that five or more persons conduct a gambling business for two or more successive days a presumption arises that the "take" is in excess of $2,000 in any single day. Nevertheless, the magistrate or district judge from whom the warrant or interception order is sought must still find probable cause to issue the warrant or order. United States v. Politi, 334 F.Supp. 1318, 1323 (S.D.N.Y.1971). It should be noted that the district judge who issued the two wiretap orders in this case had before him detailed affidavits of F.B.I. agents based on observations and information received from reliable confidential sources and that this information was sufficient to establish probable cause without reference to the statutory presumption. We hold that 18 U.S.C. § 1955(c) does not violate the Fourth Amendment by permitting the issuance

of warrants where probable cause has not been established.

### The Wiretap Evidence

Much of the evidence in this case consisted of conversations overheard by government agents as the result of two wiretap orders issued by the district court. In addition, gambling paraphernalia which was seized pursuant to a search warrant was introduced. The affidavit upon which the search warrant was based contained a great deal of information which flowed from the wiretaps. The first wiretap order was issued along with a "pen register" * order on November 22, 1971. The application was filed by an Assistant United States Attorney for the Northern District of Ohio and was supported by the affidavit of the FBI agent who had supervised the investigation of the case. There was also filed with the application a letter to the Assistant United States Attorney from Henry E. Petersen, Acting Assistant Attorney General of the United States, which authorized the Assistant United States Attorney to make application to a federal judge for an order permitting the interception of wire communications to and from facilities described in the letter for a period of 15 days. These documents satisfied the probable cause requirements for issuing an intercept order and the recitations contained in them indicated that authorization to apply for the order had been granted as a result of procedures which complied with the requirements of 18 U.S.C. §§ 2516 and 2518. Section 2516 provides in part as follows:

> (1) The Attorney General, or any Assistant Attorney General specially designated by the Attorney General, may authorize an application to a Federal judge of competent jurisdiction for, and such judge may grant in conformity with

section 2518 of this chapter an order authorizing or approving the interception of wire or oral communications by the Federal Bureau of Investigation, . . . ."

 On the motion to suppress evidence gained from these wiretaps it was shown that neither the Attorney General nor any assistant attorney general specially designated by him had authorized the application which resulted in the first wiretap order. Instead, Sol Lindenbaum, Executive Assistant to Attorney General John N. Mitchell, affixed Mr. Mitchell's initials to a memorandum addressed to Acting Assistant Attorney General Petersen authorizing the application. It is maintained by the government that this procedure satisfies the requirements of § 2516 because Lindenbaum, was the "alter ego" of the Attorney General. On the other hand, appellants argue that the procedures of §§ 2516 and 2518 were carefully worked out by Congress and that one of the most important considerations was that the person approving authorization for wiretap applications not only be identifiable, but also be politically responsible. The Attorney General and all assistant attorneys general are appointed with the advise and consent of the Senate whereas the appointment of the executive assistant to the Attorney General is not subject to Senate confirmation.

The Supreme Court has recently held that evidence which is obtained from an interception order based on the procedures followed in obtaining the first authorization in this case is subject to suppression. United States v. Giordano, 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341, (decided May 13, 1974). The Court held that § 2516 may not be construed to permit the Attorney General to delegate authority to approve applications for wiretap authorizations to anyone other than an assistant attorney general. Thus the

---

* A pen register is a device attached to a telephone line which records on paper tape the telephone numbers dialed from that line. It also records the number of rings on incoming calls, but not the calling numbers.

It does not indicate whether outgoing or incoming calls are completed and does not record conversations. The pen registers used in this case were attached to the monitoring devices which recorded conversations.

communications overheard pursuant to the first order were "unlawfully" intercepted, a ground for a motion to suppress under § 2518(10)(a)(i).[1]

In obtaining the second wiretap order in this case the Justice Department followed the procedure described in United States v. Chavez, 416 U.S. 562, 94 S.Ct. 1849, 40 L.Ed.2d 380 (decided May 13, 1974) and United States v. Martinez, #73–1740, 498 F.2d 464 (6th Cir., decided June 18, 1974). Although there was a misidentification of the officer who authorized the application, since the Attorney General did in fact personally approve the request from a field attorney, there was substantial compliance with the statutory requirements. Even though there were two separate surveillance orders in this case, it is apparent that much of the information contained in the application for the second order was obtained from electronic surveillance as a result of the first order. In *Giordano* there were two wiretap orders, the second being an extension order which was personally approved by the Attorney General. The Supreme Court noted that results of the interceptions made pursuant to the first order were recited in detail, as required by § 2518(1)(f), in the affidavit filed in support of the application for an extension. Even if the other evidence, exclusive of information obtained from the illegal order, were sufficient to support the extension order, communications intercepted under that order were subject to suppression. The Court noted that the Act forbids extensions without consideration of information already discovered by means of the original order, and stated—

In our view, the results of the conversations overheard under the initial or-

der were essential, both in fact and in law, to any extension of the intercept authority. Accordingly, communications intercepted under the extension order are derivative evidence and must be suppressed. 416 U.S. at 533, 94 S.Ct. at 1835.

■ Though the second application in this case was not literally for an extension order since it added a new suspect and several new telephones, it was filed immediately upon expiration of the first order and related primarily to the same persons and locations. Not being an application for an extension, it was not controlled by § 2518(1)(f). In this respect the present case differs from *Giordano* and it cannot be said that the results of the conversations overheard pursuant to the first order were "essential in law" to issuance of the second order. Nevertheless, a significant portion of the supporting affidavit filed with the second application consisted of transcripts of conversations overheard and lists of calls monitored pursuant to the first order. This information was relied upon by the applicant and presumably considered by the district judge who granted the second order. While not essential in law under the circumstances of this case, we deem the results of the first order to be "essential in fact" to the granting of the second order.

■ Congress fashioned an exclusionary rule for illegal wiretap evidence in 18 U.S.C. § 2515, which provides that—

Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in

---

[1]. The grounds for a motion to suppress are set forth in 18 U.S.C. § 2518(10)(a) as follows:

(i) the communication was unlawfully intercepted;

(ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or
(iii) the interception was not made in conformity with the order of authorization or approval.

**1232**

or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter.

There is no indication that the standard of exclusion to be applied to illegally obtained information disclosed in an application relied upon to grant a new order is less stringent than that applied to illegally obtained information disclosed in an application relied upon to grant an extension. The words "derived therefrom" clearly extend the right of exclusion beyond evidence directly obtained as a result of a surveillance order. This appears to be a codification of the "fruit of the poisonous tree" doctrine. Nardone v. United States, 308 U.S. 338, 341, 60 S.Ct. 266, 84 L.Ed. 307 (1939). See United States v. Giordano, *supra*, dissenting opinion of Mr. Justice Powell, 416 U.S. at 558–561, 94 S.Ct. 1820, 40 L. Ed.2d 341. The record demonstrates a connection between the results of the first order and the asserted need for the second. The reliance on those results in support of the second application indicates that this connection had not "become so attenuated as to dissipate the taint." *Nardone, supra,* 308 U.S. at 341; Wong Sun v. United States, 371 U.S. 471, 491, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

We conclude that all evidence obtained from the interception of communications pursuant to the district court orders of November 22 and December 8, 1971 and items seized pursuant to search warrants issued in part on the basis of intercepted communications were derived from the illegal order of November 22 and must be suppressed. In view of this conclusion, it is not necessary to consider other issues which were briefed and argued.

The judgment of the district court is reversed and remanded for further proceedings consistent with this opinion.