**UNITED STATES of America,
Plaintiff,**

v.

**Joseph J. LANESE et al., Defendants.**

**No. CR 71-470.**

United States District Court,
N. D. Ohio, E. D.

Nov. 25, 1974.

---

**526**

David Margolis, David S. Felman, Steven R. Olah, Special Attys., Dept of Justice, for plaintiff.

James K. O'Malley, Morris, Safier & Makoroff, Pittsburgh, Pa., M. Alfred Roemisch, Roemisch & Wright, Robert J. Rotatori, Gold, Rotatori, Messerman & Hanna, Arlene B. Steuer, Cozza, Steuer & Stavole, Cleveland, Ohio, for defendants.

## MEMORANDUM OPINION AND ORDER

BATTISTI, Chief Judge.

Defendants, Lanese, Cihal, Delsanter, Nardi and Heller have moved this court pursuant to 18 U.S.C. § 2518(10)(a) for an order suppressing any and all evidence obtained from the interception of any wire or oral communication pertaining to them. Defendants argue that such evidence should be suppressed because (a) the application for the interception order does not comply with the

requirements of 18 U.S.C. § 2516(1), and (b) the application for the interception order itself was based on illegally obtained evidence.

The relevant facts appear to be as follows: Defendants Lanese and Cihal were charged in a previous criminal action in the United States District Court for the Western District of Pennsylvania. That indictment was based on wire interceptions (the "Pittsburgh wiretap") which themselves were subsequently suppressed, United States v. Cihal, 336 F.Supp. 261 (W.D.Pa.1972), aff'd 497 F.2d 922 (3d Cir. 1974). Information derived from the Pittsburgh wiretap formed part of the basis for the application for the wire interceptions (the "Cleveland wiretap") that are the subject of the instant motion.

In response to the defendants' motion the government argues (a) only defendants Lanese and Cihal have standing to suppress on the basis of the illegality of the Pittsburgh tap, since only they· are "aggrieved persons" as to that tap within the meaning of 18 U.S.C. § 2510(11), (b) the brief reference to the Pittsburgh wiretap in the application for the Cleveland wiretap merely amplified the otherwise sufficient probable cause, and (c) the procedures used in obtaining authorization for the Cleveland wiretap are valid under the "misidentification" ruling of United States v. Chavez, 416 U.S. 562, 94 S.Ct. 1849, 40 L.Ed.2d 380 (1974).

With regard to defendants' standing to suppress, 18 U.S.C. § 2518(10)(a) delineates the grounds for suppression and grants standing in such action to "any aggrieved person." Title 18 U.S.C. § 2510(11) defines "aggrieved person" as one "who was a party to any intercepted wire or oral communication or a person against whom the interception was directed."

In Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969) it was stated:

"The established principle is that suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence." 394 U.S. at 171–172, 89 S.Ct. at 965.

More specifically the Court added that:

"any petitioner would be entitled to the suppression of government evidence originating in electronic surveillance violative of his own Fourth Amendment right to be free of unreasonable searches and seizures. Such violation would occur if the United States unlawfully overheard conversations of a petitioner himself or conversations occurring on his premises, whether or not he was present or participated in those conversations." 394 U.S. at 176, 89 S.Ct. at 968.

■ Standing to suppress, therefore, accrues to those who are overheard as a result of electronic surveillance and those who own the premises upon which such conversations take place. Thus, in the instant case, the threshold question is to determine who among the movants is possessed of such standing.

■ With regard to the Pittsburgh tap, it is clear that only defendants Lanese and Cihal have standing to claim prejudice from its illegality. They are the only movants who were overheard via the Pittsburgh tap. As such they are "aggrieved persons" and may assert that the Cleveland tap is tainted by the Pittsburgh tap. The other movants may possess standing to suppress the Cleveland tap on other grounds, but they are precluded from drawing upon the Pittsburgh tap as a source of taint. As was stated in Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960):

"In order to qualify as a 'person aggrieved by an unlawful search and seizure' one must have been a victim of a search or seizure, one against whom the search was directed, as distinguished from one who claims prejudice only through the use of evidence

gathered as a consequence of a search or seizure directed at someone else." 362 U.S. at 261, 80 S.Ct. at 731.

In similar cases, where defendants have sought to suppress one wiretap on the basis of a prior, illegal wiretap, standing was predicated on being an "aggrieved person" with regard to the prior tap. In United States v. Ceraso, 355 F.Supp. 126 (M.D.Pa.1973) the court said:

> "The court will deny the motion as to Defendant Bosch for the additional reason that he lacks standing to challenge the prior tap because he does not claim to be a party to any communication intercepted during that tap, a person against whom the interception was directed, or a person upon whose premises the conversations occurred." 355 F.Supp. at 127.

See also United States v. King, 478 F.2d 494, 506 (9th Cir. 1973); United States v. Iannelli, 339 F.Supp. 171, 177 (W.D. Pa.1972), aff'd 477 F.2d 999 (3rd Cir. 1973).

Were this result not to obtain an anomalous situation would result. Those defendants who were not parties to conversations overheard on the Pittsburgh tap would have standing to allege its derivative taint while unable to suppress it directly. Thus having ascertained who may proceed in this action armed with the illegality of the Pittsburgh tap there remains a determination of the merits of that argument.

■ In its response to the instant motion the government acknowledged that it· had "utilized in small part, information obtained through" the Pittsburgh wiretap. Such use occurred in the affidavit supporting the application for the Cleveland wiretap. The government argues that such reference to the Pittsburgh tap is merely cumulative and its excision would not diminish the sufficiency of the probable cause contained in the supporting affidavit. Defendants rely on United States v. Wac, 498 F.2d 1227 (6th Cir. 1974) for the proposition that any use of illegally obtained information in the application for the Cleveland tap requires suppression of all evidence derived therefrom. In that case "a *significant portion* of the supporting affidavit filed with the second application consisted of transcripts of conversations overheard and lists of calls monitored pursuant to the first order," 498 F.2d at 1231 (emphasis added). Moreover "the record demonstrate[d] a connection between the results of the first order and the asserted need for the second," 498 F.2d at 1232. Neither of these factors are present in the instant case [1] and it would appear that the connection between the Pittsburgh tap and the application for the Cleveland tap had "become so attenuated as to dissipate the taint," Nardone v. United States, 308 U.S. 338, 341, 60 S.Ct. 266, 268, 84 L.Ed. 307 (1939); Wong Sun v. United States, 371 U.S. 471, 491, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Under these circumstances the severe sanction of suppression is not required.

■ As an alternate grounds for suppression, defendants allege that the application procedure followed in obtaining authorization for the Cleveland tap did not comply with the requirements of 18 U.S.C. § 2516(1). That statute states in pertinent part:

> "(1) The Attorney General, or any Assistant Attorney General specially designated by the Attorney General,

---

[1]. It should be noted that the affidavit filed in support of the application for the Cleveland wiretap included transcripts of the Pittsburgh wiretap. These appear, however, to have been appended more for completeness than for substance. In terms of· both quantity and quality of probable cause such transcripts have only a marginal impact. This also distinguishes the instant case from that of United States v. Calallero, 503 F.2d 1018 (6th Cir. 1974). That case restated the holding of *Wac* to be "that a separate application for an intercept order which is based on information derived from an illegal earlier order is subject to suppression under 18 U.S.C. § 2515." Having determined that the application for the Cleveland wiretap was not *based on* information derived from the Pittsburgh wiretap neither *Wac* nor *Calallero* are controlling.

may authorize an application to a Federal judge of competent jurisdiction for, and such judge may grant in conformity with section 2518 of this chapter an order authorizing or approving the interception of wire or oral communications by the Federal Bureau of Investigation . . ."

Noncompliance with the above provisions constitute grounds for suppression, 18 U.S.C. § 2518(10)(a).

Before proceeding to the merits of defendants argument against the propriety of the authorization for the Cleveland wiretap it is again necessary to ascertain standing to proffer such argument. A review of the order of this court directing service of an inventory of conversations overheard via the Cleveland wiretap reveals that only defendants Lanese, Cihal, Delsanter, Nardi, and Heller were persons overheard and/or persons upon whose premises such conversations took place. As such only they possess standing to challenge the Cleveland tap, Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969).

The procedure followed in obtaining authorization to apply for the Cleveland wiretap in the present case appears substantially the same as was followed in United States v. Martinez, 498 F.2d 464 (6th Cir. 1974). In that case Henry E. Peterson, then a deputy assistant attorney general, signed Will Wilson's name to the letter to the requesting attorney authorizing him to make application to a federal judge for an interception order. Sol Lindenbaum, Executive Assistant to the Attorney General, filed an affidavit stating that the Attorney General approved the request for authorization as was evidenced by his initialing a memorandum to Will Wilson to that effect. The Sixth Circuit Court of Appeals held that this factual situation fell within the "misidentification" ruling of United States v. Chavez, 416 U.S. 562, 94 S.Ct. 1849, 40 L.Ed.2d 380 (1974) and suppression was therefore unwarranted.

 In the instant case Harold P. Shapiro, deputy assistant attorney general, signed Will Wilson's name to the letter authorizing application for an interception order. Similarly Sol Lindenbaum, Executive Assistant to the Attorney General, filed an affidavit to the effect that the Attorney General approved the wiretap request and personally initialed a memorandum to Will Wilson acknowledging his approval.

While it cannot be denied that the government has engaged in a "paper charade" neither can it be denied that the Attorney General approved the application for the wiretap. Under these circumstances subsequent misidentification of the authorizing official does not require suppression of the evidence derived from the wiretap. This result is mandated by United States v. Martinez, 498 F.2d 464 (6th Cir. 1974) on the authority of *Chavez*.

For the reasons set forth above, defendants' motions to suppress are denied.

It is so ordered.