**UNITED STATES of America,**
**Appellee,**

v.

**Geneva WILLIAMS, Residence at 300**
**Fisher, Pontiac, Michigan,**
**Appellant.**

**No. 71–1565.**

United States Court of Appeals,
Sixth Circuit.

April 12, 1972.

---

igan, (occupied by one Geneva Williams) alleging that concealed therein was certain property used in connection with an illegal gambling business as defined by 18 U.S.C. § 1955. On May 6, 1971, a search of the location produced bookmaking paraphernalia and approximately $25,900.[1] No arrests were made at the time of the raid and no criminal or forfeiture proceedings have been initiated by the United States.[2] On May 7, 1971, Geneva Williams, who resides at the searched premises, filed a "Motion to Quash Search Warrant, Suppress Evidence and Return Property." The district court held a hearing and ordered that the motion be denied. This appeal is from that order.

At the outset we take note of a jurisdictional question presented by the appeal. Under 28 U.S.C. § 1291 we may hear an appeal from a "final decision" of the district court. Thus we may not review the denial of the present motion if that denial is interlocutory. If, for example, there is outstanding a forfeiture proceeding, a complaint or arraignment, or an indictment, the denial of a motion is merely an interlocutory proceeding preliminary to subsequent proceedings. As stated by the Supreme Court in United States v. Ryan, 402 U.S. 530, 533, 91 S.Ct. 1580, 1582, 29 L.Ed.2d 85 (1971):

. . . . We have thus indicated that review is available immediately of a denial of a motion for the return of seized property, where there is no criminal prosecution pending against the movant. See DiBella v. United States, *supra*, [369 U.S.] at 131–132, [82 S.Ct. 654, 7 L.Ed.2d 614.] Denial of review in such circumstances would mean that the Government might indefinitely retain the property without any opportunity for the movant to assert on appeal his right to possession.

Patmon, Young & Kirk, P. C., James B. Feaster, Detroit, Mich., on brief for appellant.

Ralph B. Guy, Jr., U. S. Atty., Detroit, Mich., on brief for appellee; Laurence Leff, Sp. Atty., U. S. Dept. of Justice, Detroit, Mich., of counsel.

Before EDWARDS, MILLER AND KENT, Circuit Judges.

PER CURIAM.

The Federal Bureau of Investigation obtained a search warrant for the premises at 300 Fisher Street, Pontiac, Mich-

---

1. In an affidavit filed with Geneva Williams' motion, the appellant claims that the FBI seized $35,000.00 but forced her to sign a receipt indicating that only $25,915.09 had been seized.

2. 18 U.S.C. Sec. 1955(d) provides that any property, including money, used in violation of Sec. 1955 shall be subject to forfeiture in proceedings instituted for that purpose.

Following our ruling in Coury v. United States, 426 F.2d 1354 (1970), we consider the present motion as a motion to return the seized property and conclude that the district court's order was a "final decision."

The appellant contends that the search warrant was unsupported by probable cause first, because the affidavit failed to show sufficient facts to bring the described activities within the purview of the statute allegedly violated and second, because there was no basis for crediting the reports of the two informants. We think only the first contention merits discussion.

The statute allegedly violated is 18 U.S.C. Sec. 1955 (and also Secs. 2 and 371, the aider and abettor and conspiracy statutes respectively). The substantive offense involved here is defined by Sec. 1955:

"(a) Whoever conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business shall be fined not more than $20,000 or imprisoned not more than five years, or both.

(b) As used in this section—

(1) 'illegal gambling business' means a gambling business which —

(1) is a violation of the law of the State or political subdivision in which it is conducted;

(ii) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and

(iii) has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day.

(2) 'gambling' includes but is not limited to poolselling, bookmaking, maintaining slot machines, roulette wheels or dice tables, and conducting lotteries, policy, bolita or numbers games, or selling chances therein."

Thus to constitute a violation of Sec. 1955, five or more persons must be involved in an illegal gambling business which remains in continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day.

The question before us, however, is not the sufficiency of the evidence to support a conviction under the statute, but the sufficiency of the affidavit to show probable cause that the statute was being violated so as to justify the issuance of a search warrant. The pertinent parts of the affidavit upon which the search warrant was based are reproduced below.[3]

3. 1. I am a Special Agent of the Federal Bureau of Investigation, have been so employed for 2½ years and have been assigned to the Federal Bureau of Investigation, Detroit, Michigan Office, for the past 1½ years.

2. From my experience in the investigation of gambling offenses, I know that in its most common form, "policy" or "numbers" betting involves wagers on a three-digit number, which is determined on the basis of parimutuel figures at selected race tracks. If the bettor picks the winning number, he may receive six hundred times the amount of his wager. While there are occasional large wagers, the "numbers" racket thrives on a great number of small bets.

3. In order to operate an organized numbers gambling operation, an extensive network of runners, writers and controllers is required. After taking the bets, the runner turns them over to a writer who makes a written record of the bet, including the number selected, amount wagered and the bettor's identification. The writers phone in their recorded bets to a controller who handles a group of writers. The controllers in turn record the bets and total the amounts, particularly noting substantial amounts bet on any one number. The controller then conveys the data which he has tabulated to the central bank. The bank is ultimately responsible for receiving the bets and for paying on winning bets.

■ Thus the affidavit given by an agent of the FBI, with long experience in investigation of gambling offenses, sets forth that an organized numbers gambling operation requires "an extensive network of runners, writers and controllers." Since the affidavit in question here shows that Geneva Williams was involved on April 19, 1971 with at least two other persons in a numbers betting transaction and that she was also observed taking numbers bets both in person and over the telephone sometime during the period of April 28, 1971 to May 1, 1971, we think it reasonable to draw the conclusion that she was engaged in an organized numbers gambling operation of the type described by the FBI agent in the supporting affidavit. Such an operation would require the participation of a large number of other persons. In addition, since Geneva Williams is identified in the affidavit as being involved in two separate transactions separated by as many as nine to thirteen days, we think the magistrate could reasonably conclude that there was probable cause to believe that

\* \* \* \* \*

8. I submit that the following allegations provide probable cause to believe that Sections 1955, 371 and 2 of Title 18, United States Code, have been violated in that:

a. On April 19, 1971, "LIL" VINEGAR placed a telephone call to GENEVA WILLIAMS wherein she made a numbers bet and indicated she was acting on behalf of a man she identified as "FRANK,"

b. On April 19, 1971, a man identified as FRANK DORN took a numbers bet over the telephone from an unidentified male while he (DORN) was speaking from a phone located at 150 Wesson, Pontiac, Michigan.

c. "LIL" VINEGAR in the call described in paragraph 8a above, was speaking from the same phone as referred to in paragraph 8b in connection with FRANK DORN.

d. On February 24, 1971, ELIZABETH ALLEN took a phone call from an unidentified female wherein they discussed the fact that a man described as a "pick-up man" had arrived at, and already left the ALLEN residence. The caller indicated disappointment at this news saying, "She had some numbers here at the house."

e. An informant, who has provided reliable information to the Federal Bureau of Investigation for a period of three years, leading to at least six local arrests, informed me on May 1, 1971, that he had been present at the residence of ELIZABETH ALLEN on more than one occasion in February, 1971, and personally observed her taking numbers bets over the telephone.

f. The same informant referred to in paragraph 8e above, told me on May 1, 1971, that during the month of February, 1971, he overheard ELIZABETH ALLEN admit that she was taking numbers bets for FRED CORR,

g. On April 24, 1971, FRED CORR placed a call wherein an unidentified female disseminated the winning number to CORR,

h. FRED CORR, on April 24, 1971, approximately two hours after the call referred to in paragraph 8g, disseminated the same number to an unidentified male, while using a phone listed to FRED CORR at 441 Kuhn, Pontiac, Michigan.

i. All the phone interceptions referred to above were undertaken pursuant to lawful court order,

j. The conduct discussed in paragraphs 8a through 8i evidence violations of Michigan Compiled Laws Sections 750.301, 750.305, 750.306, 750.157a, 750.92 and and 767.39.

9. CONFIDENTIAL INFORMANT NUMBER ONE has been providing reliable information to the Federal Bureau of Investigation for three years, leading to eight arrests. This informant's information has been corroborated on several occasions by physical and electronic surveillance.

I have examined verbatim transcript of court authorized wire interceptions revealing that on April 19, 1971, "LIL" VINEGAR called GENEVA WILLIAMS and placed a numbers bet with GENEVA WILLIAMS. Later in this call "LIL" asked GENEVA how much FRANK "owed." GENEVA answered "He owe 12 already, he said he thought it was 9, but it was 12."

CONFIDENTIAL INFORMANT NUMBER ONE informed me that on one occasion during the period April 28, 1971 to May 1, 1971, he was at 300 Fisher, Pontiac, Michigan, where he observed GENEVA WILLIAMS taking numbers bets both in person and over the phone. He advised that he observed what he knew to be bet slips, tapes reflecting numbers bets, and United States currency.

her operation was a continuing one. Construing the affidavit in its entirety, we find that probable cause was shown that the statute was being violated and accordingly that the search and seizure were not unlawful. We recognize the well settled principle that affidavits for search warrants "must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion." United States v. Ventresca, 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965).

Accordingly, the order of the district court denying the appellant's motion to return the seized property is hereby affirmed.[4]

KENT, Circuit Judge (dissenting).

I must respectfully dissent. I am not satisfied that the affidavits in support of the search warrant were sufficient to justify the issuance of the warrant. The Fourth Amendment to the Constitution of the United States provides in part: " * * * * no Warrants shall issue, but upon probable cause * * * *." I do not find probable cause in this case.

The tests to be applied to an affidavit for a search warrant are summarized in Spinelli v. United States, 393 U.S. 410, 419, 89 S.Ct. 584, 590–591, 21 L.Ed.2d 637 (1969):

"The affidavit, then, falls short of the standards set forth in *Aguilar, Draper,* and our other decisions that give content to the notion of probable cause. In holding as we have done, we do not retreat from the established propositions that only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause, Beck v. Ohio, 379 U.S. 89, 96 [, 85 S.Ct. 223, 228, 13 L.Ed.2d

142] (1964); that affidavits of probable cause are tested by much less rigorous standards than those governing the admissibility of evidence at trial, McCray v. Illinois, 386 U.S. 300, 311 [, 87 S.Ct. 1056, 1062, 18 L.Ed.2d 62] (1967); that in judging probable cause issuing magistrates are not to be confined by niggardly limitations or by restrictions on the use of their common sense, United States v. Ventresca, 380 U.S. 102, 108 [, 85 S.Ct. 741, 745, 13 L.Ed.2d 684] (1965); and that their determination of probable cause should be paid great deference by reviewing courts, Jones v. United States, 362 U.S. 257, 270–271 [, 80 S.Ct. 725, 735–736, 4 L.Ed.2d 697] (1960). But we cannot sustain this warrant without diluting important safeguards that assure that the judgment of a disinterested judicial officer will interpose itself between the police and the citizenry."

This Court has consistently applied the following standard in determining the existence of probable cause.

"Probable cause exists where the facts and circumstances within the officer's (sic) knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed."

United States v. Nicholson, 303 F.2d 330, 332 (6th Cir.1962). Accord: DiPiazza v. United States, 415 F.2d 99, 105 (6th Cir. 1969); United States v. Gosser, 339 F.2d 102, 111 (6th Cir. 1964).

This case, however, is not one where hearsay statements were involved. United States v. Gosser, *supra,* and it is not a case where the investigation was

---

4. To hold that the affidavit supporting a search warrant under the statute in question requires a direct and specific showing with respect to the necessary elements of the offense and that these elements may not be established by reasonable inference from the facts and circumstances would seriously impair the effectiveness of the statute. Further, in our view,

such holding is not required by the Fourth Amendment. Since no proceeding has been instituted against appellant in which the seized property would serve as evidence or as a basis of evidence, attention is called to the observation made by this Court in the concluding paragraph of its opinion in Coury v. United States, 426 F. 2d at 1356.

triggered by weak evidence. DiPiazza v. United States, *supra*.

The statute setting forth the crime forming the reason for the search warrant and the affidavit in support of the issuance of the search warrant are set forth in full in the majority opinion and need not be repeated here.

In summary the affidavit sets forth: (1) In February, 1971, an informant observed Elizabeth Allen taking numbers bets over a telephone. The informant claimed that Allen stated she was taking bets for Fred Corr; (2) On February 24, 1971, Allen took a telephone call concerning certain numbers transactions; (3) On April 24, 1971, Fred Corr made a call and received information about a winning number; (4) On April 19, 1971 "Lil" Vinegar called Geneva Williams making a numbers bet which she indicated was made on behalf of "Frank", no last name was given, but the telephone call originated from the same telephone as that used by Frank Dorn; (5) On April 19, 1971, Frank Dorn took a numbers bet over the telephone (there was a court authorized "tap" on the telephone) from an unidentified male person. (6) On one occasion during the period, April 28, 1971 to May 1, 1971, an informant observed Geneva Williams taking numbers bets in person and over the telephone at 300 Fisher, Pontiac, Michigan [the location where the search warrant was executed].

I have no doubt that between April 19, 1971 and May 1, 1971, Geneva Williams was engaged in gambling activity which was a violation of the laws of the State of Michigan.

Some of the material contained in the affidavit relates to other people engaged in gambling activity, but without any evidence or even a suggestion that all of the people named had any connection with any gambling activity on the part of Geneva Williams, or any gambling activity conducted at 300 Fisher, Pontiac, Michigan, the house to be searched. There is a general description of the manner in which the "numbers racket" is conducted from which presumably the Government intends to satisfy the requirement that five or more people were joined with Geneva Williams in violating the provisions of Title 18 U.S.C. § 1955. I cannot accept such a general description as being a sufficient statement of "facts" to form a foundation for a search warrant.

In reality the affidavit establishes that Geneva Williams was engaged in taking numbers bets at 300 Fisher, Pontiac, Michigan; that she was taking such bets on April 19, 1971, on which date she accepted a bet from "Lil" Vinegar, and that "Lil" Vinegar in placing that bet used the same telephone as that used by Frank Dorn to accept bets on April 19, 1971.

I find nothing in the affidavit to establish that the gambling business in which Geneva Williams was engaged involved "five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business." The only evidence in the affidavit which would lead to that conclusion would be the general statements made by the affiant in relation to the manner in which the "numbers racket" was conducted. If we accept such statements as the basis for a search warrant then the mere single statement of an informant that he made an observation of acceptance of numbers bets and the presence of material used for numbers bets would be sufficient to establish a basis for the issuance of a search warrant because of violation of the pertinent statute in that there were "five or more persons who conduct, etc. such business."

The addition of Frank Dorn and "Lil" Vinegar is in my opinion insufficient to establish probable cause to believe that Section 1955 had been violated by Geneva Williams. Even if we were to accept the theory that many people are required in the conduct of the "numbers racket" there are certainly no facts in this affidavit sufficient to establish probable cause to believe that the required "five or more" were involved with Geneva Williams in this case.

I find insufficient facts in the affidavit to establish probable cause to believe that the gambling business in which Geneva Williams was engaged had "been or remains[ed] in substantially continuous operation for a period in excess of thirty days." At most the affidavit established that Geneva Williams was engaged in some aspect of the "numbers racket" during a period which commenced not earlier than April 19, 1971 and continued not later that May 1, 1971. In my opinion the facts recited were insufficient to establish "substantially continous operation for a period in excess of thirty days."

I would reverse the order of the District Court and remand the case for entry of an order requiring the return of the seized property to the appellant.