UNITED STATES of America,
Appellant,

v.

Thomas W. DONOVAN et
al., Appellees.

No. 74–1553.

United States Court of Appeals,
Sixth Circuit.

March 17, 1975.

As Amended May 5, 1975.

U. S. Atty. Frederick M. Coleman, Edwin J. Gale, ·Cleveland, Ohio, Marc P. Richman, Atty., App. Section, Crim. Div., Dept. of Justice, Washington, D. C., Shirley Baccus-Lobel, Arlington, Va., for appellant.

Carmen A. Policy, Youngstown, Ohio, Robert W. Ent, Cincinnati, Ohio, Christopher F. Nardi, Cleveland, Ohio, Bradford Gearinger, Akron, Ohio, for appellees.

Before PHILLIPS, Chief Judge, ENGEL, Circuit Judge, and CECIL, Senior Circuit Judge.

PHILLIPS, Chief Judge.

This case involves the admissibility of evidence obtained through court-authorized telephone wiretaps. District Judge

Robert B. Krupansky suppressed evidence against the five named defendants-appellees on the ground that Government agents failed to comply with two statutory requirements. The Government appeals.

Essentially the basic question on this appeal is whether Congress meant what it said when it enacted Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2520, permitting court-authorized interception of telephone conversations under carefully prescribed restrictions.

In United States v. Chavez, 416 U.S. 562, 574–75, 94 S.Ct. 1849, 1856, 40 L.Ed.2d 380 (1974), the Supreme Court said:

> "[W]e did not go so far as to suggest that every failure to comply fully with any requirement provided in Title III would render the interception of wire or oral communications 'unlawful' . . . suppression is not mandated for every violation of Title III, but only if 'disclosure' of the contents of the intercepted communications, or derivative evidence, would be in violation of Title III."

We hold that the District Court correctly found that disclosure in the present case was a violation of Title III. We reject the Government's contention that non-compliance with the requirements of this statute can be condoned or excused on the theory that it was "inadvertent" and "unintentional" or constituted "mere technical violations."

## I.

The first breach of the statute involves 18 U.S.C. § 2518(1)(b)(iv), which requires that each application for an order authorizing or approving the interception of a wire or oral communication shall be made in writing upon oath or affirmation to a judge of competent jurisdiction which shall include, among other specified information, "the identity of the person, if known, committing the offense and whose communications are to be intercepted."

The District Court held that the defendants Donovan, Robbins and Buzzacco were "known" to the Government within the meaning of the statute and that failure to include their names in the applications and orders contravenes the statute and necessitates the suppression of the contents of intercepted communications and the evidence derived therefrom as to these three defendants.

The second breach of the statute involves a failure to comply with the inventory requirements of 18 U.S.C. § 2518(8)(d), which provides that:

> "(d) Within a reasonable time but not later than ninety days after the filing of an application for an order of approval under section 2518(7)(b) which is denied or the termination of the period of an order or extensions thereof, the issuing or denying judge shall cause to be served, on the persons named in the order or the application, and such other parties to intercepted communications as the judge may determine in his discretion that is in the interest of justice, an inventory which shall include notice of—
>
> (1) the fact of the entry of the order or the application;
>
> (2) the date of the entry and the period of authorized, approved or disapproved interception, or the denial of the application; and
>
> (3) the fact that during the period wire or oral communications were or were not intercepted.

The judge, upon the filing of a motion, may in his discretion make available to such person or his counsel for inspection such portions of the intercepted communications, applications and orders as the judge determines to be in the interest of justice. On an ex parte showing of good cause to a judge of competent jurisdiction the serving of the inventory required by this subsection may be postponed."

The District Court held that the defendants Merlo and Lauer were not served with notices of inventory and that in the interest of justice their communications must be suppressed.

These five defendants-appellees[1] were among seventeen persons indicted for their participation in an illegal gambling business. The two count indictment charged conspiracy and substantive violations of 18 U.S.C. §§ 371 and 1955. A large part of the evidence which supported these indictments was gathered pursuant to an order authorizing the interception of wire communications issued by the District Court on November 28, 1972. This order was granted upon application of the Organized Crime and Racketeering Section of the Department of Justice and after consideration of a forty-six page affidavit submitted by a special agent of the Federal Bureau of Investigation. The affidavit indicated that reliable informants had named certain persons engaged in illegal gambling activities and that this information was corroborated by physical surveillance and telephone company records.

The order, which was issued by Chief District Judge Frank J. Battisti, authorized special agents of the FBI:

"To intercept wire communications of Albert Kotoch, Joseph Anthony Spaganlo, Ernest L. Chickeno, Raymond Paul Vara, George F. Florea, Suzanne Veres and others, as yet unknown concerning the above described offenses to and from the telephones [described in the order]."

This order terminated on December 12, 1972.

On December 26, 1972, an extension of the November 28 order was sought and approved. This new order dropped two of the four previously approved intercepts. In addition, an order authorizing intercepts for another telephone number was sought and approved. These orders terminated on January 5, 1973.

On February 21, 1973, the court ordered the service of inventory notice upon 37 individuals known to have been parties to the intercepted conversations, as required by 18 U.S.C. § 2518(8)(d). The Government subsequently checked its records and discovered that two additional parties should have been given notice. On September 11, 1973, an amended order was filed which served inventory notice on the two additional parties. Neither submission to the District Judge named defendants Merlo and Lauer, although they were known to the Government as participants in the gambling activity whose communications had been intercepted.

II.

Congress has provided a statutory basis for suppression of wiretap evidence. 18 U.S.C. § 2515 prohibits the introduction of wiretap evidence or its fruits "if the disclosure of that information would be in violation of this chapter." The specific grounds for suppression are spelled out in 18 U.S.C. § 2518(10)(a); an aggrieved person may move to suppress when:

"(i) the communication was unlawfully intercepted;

"(ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or

"(iii) the interception was not made in conformity with the order of authorization or approval."

In affirming an order to suppress pursuant to these provisions of the statute in United States v. Giordano, 416 U.S. 505, 527, 94 S.Ct. 1820, 1832, 40 L.Ed.2d 341 (1974), the Supreme Court said:

"[W]e think Congress intended to require suppression where there is failure to satisfy any of those statutory requirements that directly and substantially implement the congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device."

In United States v. Chavez, *supra*, 416 U.S. at 580, 94 S.Ct. at 1858, the Supreme Court held that Title III did not

---

1. On January 18, 1974, the District Court ordered these five defendants severed from the remaining twelve for purposes of trial.

mandate suppression under the circumstances of that case, but said:

"Though we deem this result to be the correct one under the suppression provisions of Title III, we also deem it appropriate to suggest that strict adherence by the Government to the provisions of Title III would nonetheless be more in keeping with the responsibilities Congress has imposed upon it when authority to engage in wiretapping or electronic surveillance is sought."

## III.

Title III requires that when the Government applies for a wiretap authorization, the "identity of the person, if known, committing the offense and whose communications are to be intercepted" must be disclosed specifically. 18 U.S.C. § 2518(1)(b)(iv).

There can be no doubt on the record before us that Donovan and Robbins were "known." The Government contends that Buzzacco was not "known," but, for the reasons hereinafter set forth, we agree with the District Court that the name of Buzzacco, along with the names of Donovan and Robbins, should have been disclosed to the District Judge.

Our concern in this case is whether an intercept of a conversation with three persons, known to be committing the crime for which the intercept is authorized, yet unnamed in the wiretap application and order is "unlawfully intercepted" within the meaning of 18 U.S.C. § 2518(10)(a)(i).

Title III seeks to strike a balance between the mixed advantages and dangers of electronic surveillance. Those same features which make wiretaps so valuable as a weapon against the operations of organized crime also pose a substantial threat to individual privacy. To resolve the "tension between these two stated congressional objectives, . . . the starting point,' as in all statutory construction, is the precise wording chosen by Congress in enacting Title III."

United States v. Kahn, 415 U.S. 143, 151, 94 S.Ct. 977, 982, 39 L.Ed.2d 225 (1974).

The literal language of the identification requirement leaves no question as to when the Government must specifically name the parties. Section 2518 requires that "each application *shall* include . . . the identity of the person, if known, committing the offense, and whose communications are to be intercepted." (Emphasis added.) This requirement is only one of the many specific steps that the Government must follow in order to obtain wiretap authorization, and is a procedural restraint on the use of wiretaps. In our opinion this is not a hollow requirement. It is an important part of the statutory framework that Congress formulated for protection against the dangers of electronic surveillance.

In United States v. Bellosi, 501 F.2d 833, 837 (D.C.Cir.1974), the court said:

"By asking us to refashion another clearly worded provision in Title III in a way that would somewhat ease another of the 'stringent conditions' with which a law enforcement agency must comply before conducting an interception, the Government effectively asks us to do what the *Giordano* Court would not. Section 2518(1) is no less important than Section 2516(1) to Congress' legislative scheme to allow only limited governmental interception of wire or oral communications. Section 2518(1) provides that the judge from whom interception authorization is sought be provided with a detailed and particularized application containing that information which Congress thought necessary to judicial consideration of whether the proposed intrusion on privacy is justified by important crime control needs. *See* United States v. United States District Court, 407 U.S. 297, 302, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972)."

By requiring the Government to make this disclosure Congress has made it possible for the courts to exercise strict control over communication intercepts. It is apparent that Congress intended

§ 2518(1) to impose "stringent conditions," thereby playing an integral role in the limitation of wiretap' procedures and serving a substantial purpose in the statutory scheme to limit the indiscriminate or otherwise unauthorized use of wiretaps.

When this same provision was construed in *Kahn* the Court stated that "[t]his statutory language would plainly seem to *require* the naming of a specific person in the wiretap application" when the person is known to be committing the offense. 415 U.S. at 152, 94 S.Ct. at 982. (Emphasis added.) Although the Court did not require suppression in that case it was only because Mrs. Kahn was not "known" within the meaning of the provision. There is the clear implication that if she had been "known" suppression would have been required. Later that year, in United States v. Giordano, *supra,* the Court construed § 2516(1) of Title III, requiring the Attorney General or a specially designated Assistant Attorney General to authorize the wiretap application. In that case suppression was also required because the mandatory precondition "was intended to play a central role in the statutory scheme." 416 U.S. at 528, 94 S.Ct. at 1832. Although the identity provision in the present case plays a different role in the statutory scheme than the provision in *Giordano,* we are of the opinion that it also plays "a central role."

■ Since Congress has imposed a clear requirement that the identity of the participants must be disclosed "if known," we are not concerned with the reason that these names were omitted from the application. In our view it makes no difference whether the omission was inadvertent or purposeful. The fact of omission is sufficient to invoke suppression. This omission of Government agents cannot be excused as "a mere technical violation."

■ We now come to the Government's contention that defendant Buzzacco was not "known" within the meaning of the statute.

The meaning of the term "if known" in 18 U.S.C. § 2518(1)(b)(iv) has been defined by the Supreme Court. In *Kahn, supra,* the Court concluded:

"[T]hat Title III requires the naming of a person in the application or interception order only when the law enforcement authorities have probable cause to believe that that individual is 'committing the offense' for which the wiretap is sought." 415 U.S. at 155, 94 S.Ct. at 984.

*See* United States v. Martinez, 498 F.2d 464, 466–67 (6th Cir. 1974).

The District Court found:

"Special Agent Ault, through a check of Ohio Bell Telephone Company records and execution of physical surveillances, became aware of defendant Buzzacco's identity and address in Niles, Ohio, subsequent to the first set of authorized wire interceptions. Agent Ault further testified that he was aware of Buzzacco's activity and believed he was involved in gambling activities prior to submission of the Affidavit on December 26, 1972."

The following factual background was developed to support these findings. During a ten week period in June and July 1972 ninety-one telephone calls placed by prime suspects in the case were traced to a Youngstown, Ohio, telephone number which was known to be listed under one of Buzzacco's aliases. The FBI knew from previous investigations that Buzzacco had a reputation for being a bookmaker. In the summer or fall of 1972 Buzzacco moved his place of operation to Niles, Ohio. The record is inconclusive as to the date that physical surveillance placed Buzzacco at the Niles address, although it may have been as late as December 29, 1972. Prior to that time physical surveillance of that address had been conducted. In addition, telephone calls placing lay-off bets were intercepted between the other suspects and a person at the Niles number variously identified as "Buzz" or "Buzzer." At the hearing on the motion to suppress, FBI Agent Ault, upon whose affidavits the wiretap orders were based, testified that

he had "suspicions" that Buzzacco was involved in the gambling activities prior to the submission of the wiretap applications.

Our prior decisions clearly illustrate that these facts are adequate to demonstrate "a probability of criminal conduct." Coury v. United States, 426 F.2d 1354, 1356 (6th Cir. 1970). In *Coury* we affirmed a commissioner's finding of probable cause on the strength of an affidavit which stated that the investigating special agent:

> "had personally conducted an investigation of appellant, including surveillance of his home; that he knew appellant to be a bookmaker and a gambler, and knew of his prior conviction for bookmaking activities; also that telephone company records listed calls between appellant and known gamblers in other states. In addition, the Bishop affidavit cited telephone company records showing calls from another well-known gambler to appellant's home." 426 F.2d at 1356.

*See also* United States v. Williams, 459 F.2d 909 (6th Cir. 1972).

We, therefore, hold that at the time the applications for wiretaps were made the Government had probable cause to believe that Buzzacco was engaged in the illegal gambling activities for which the intercept authorization was sought. He, therefore, should have been named in the application.

We, accordingly, affirm the order of the District Court granting the motions to suppress filed by Donovan, Robbins and Buzzacco.

### IV.

Although the defendants Merlo and Lauer were not named in the wiretap application, during the course of the intercepts they were identified as parties to the communications. On February 21, 1973, the District Court ordered the service of inventory notice on 37 persons. After the Government checked its records it was found that two persons had been omitted from the original order. On September 11, 1973, when the District Court was informed of this omission, an amended order directing service of inventory notice was granted as to these two additional parties. Merlo and Lauer's names were never brought to the attention of the court, prior to the first or second order, or at any time thereafter. Consequently they have never been served with inventory notice.

The inventory notice provisions of Title III are set out in 18 U.S.C. § 2518(8)(d) and are quoted above. Since the inventory notice provision does not require on its face that notice must be served in all instances, the case presented by Merlo and Lauer involves a slightly different situation than the identification "if known" provision of Title III discussed previously. If the overheard parties have not been named in the order, as in the present case, "the judge may determine *in his discretion*" that inventory notice should be served "in the interest of justice." 18 U.S.C. § 2518(8)(d). (Emphasis added.) The judge has no independent information as to the unnamed parties who have been overheard on the intercepts and must depend on the Government to disclose that information in order that he may exercise his discretion.

We agree with the following holding in United States v. Chun, 503 F.2d 533, 540 (9th Cir. 1974):

> "[A]lthough the judicial officer has the duty to cause the filing of the inventory, it is abundantly clear that the prosecution has greater access to and familiarity with the intercepted communications. Therefore we feel justified in imposing upon the latter the duty to classify all those whose conversations have been intercepted, and to transmit this information to the judge. Should the judge desire more information regarding these classes in order to exercise his § 2518(8)(d) discretion, we also hold that the government is required to furnish such information as is available to it. It is our belief that this allocation of responsibilities between the executive and judicial branches of government will

best serve the dual purposes underlying Title III." (Footnote omitted.)

Both Merlo and Lauer were overheard in the authorized interceptions and both subsequently were indicted.[2] The evidence in the intercepts was to be used against them. Even though the Government re-examined the records and amended the original inventory notice, Merlo and Lauer never received formal inventory notice. The District Court made a specific finding that "defendants Merlo and Lauer were not served with inventories pursuant to the act *or otherwise notified that they had been intercepted* . . .." (Emphasis added.)

This finding demonstrates to our satisfaction that the District Court has considered and decided the issue of actual notice. We draw no inference from the fact that notice was given to 39 other persons, many of whom were known to Merlo and Lauer. Others may have communicated the fact of interception to Merlo and Lauer, but this would not necessarily lead them to believe that they had been intercepted. It is just as reasonable to assume that Merlo and Lauer would believe that, since they had not received notice, their conversations were not intercepted.

■ The only evidence of notice in the record is in response to Merlo's and Lauer's motions for discovery, filed after their indictments and more than a year after the actual interceptions. If these defendants had never been indicted, they might well have never received notice of the interceptions. The Government explains this omission on the basis of "an apparent lack of communication between the FBI and the prosecutor" although the defendants urge that "the government deliberately flouted and denigrated the provisions of Title III by secreting" the defendants' names. For the purpose of this analysis it is unnecessary to determine which view is correct. Either the Government's deliberate circumvention; *see* United States v. Eastman, 465 F.2d 1057 (3d Cir. 1972), or an inadvertent error may require suppression. Although certain cases decided prior to *Giordano* and *Chavez* indicate that, in the absence of actual notice, the prejudice to the defendants is a factor to be considered, *see* United States v. Cirillo, 499 F.2d 872, 882–83 (2d Cir. 1974); United States v. Wolk, 466 F.2d 1143, 1146 (8th Cir. 1972), *Giordano* states that if the provision plays a "central role" that "suppression must follow when it is shown that this statutory requirement has been ignored." 416 U.S. at 529, 94 S.Ct. at 1832.[3]

Of the recent cases decided by the Supreme Court on the requirements of Title III the present case is most factually similar to *Giordano*. In *Giordano*, as in this case, there was no actual compliance with the statute. The unauthorized approval of wiretap orders, like the failure to serve inventory notice, are both factors which are not susceptible of a showing of prejudice. The factor which distinguishes this case from *Chavez* is that in *Chavez* the statute was in fact followed even though the wiretap orders appeared facially defective. There is no suggestion in the present case that the Government fulfilled its duty under the statute or that there was even a colorable conformity with the statutory requirements. Further, this is not a case where a strict interpretation of the statute would render the statute essentially useless for law enforcement purposes as in United States v. Kahn, 415 U.S. 143, 153, 94 S.Ct. 977, 39 L.Ed.2d 225 (1974).

From our examination of the legislative history of this provision, *see* United States v. Chun, *supra*, 503 F.2d at 537 n.6, 539–40, 542 n.12, it is our conclusion that this provision plays a central role in the statutory scheme to limit and control

---

2. This case does not present, and we do not reach, the question of the rights of unindicted persons to receive inventory notice. *See* United States v. Whitaker, 474 F.2d 1246 (3d Cir.), cert. denied, 412 U.S. 953, 93 S.Ct. 3003, 37 L.Ed.2d 1006 (1973).

3. For a general discussion of 18 U.S.C. §§ 2516 and 2518, *see* United States v. Wac, 498 F.2d 1227, 1230–32 (6th Cir. 1974).

electronic surveillance and that it "directly and substantially implement[s] the congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary device." United States v. Giordano, *supra*, 416 U.S. at 527, 94 S.Ct. at 1832.

Suppression is required if there is a breach of a Title III provision that "directly and substantially implements" the congressional scheme to limit the use of electronic surveillance. We have determined previously that the Government had a duty to disclose the identity of Merlo and Lauer, and that this duty was breached. It is our view that the inventory notice provisions have a central role in limiting the use of intercept procedures. For these reasons we agree with the District Court that the communications of Merlo and Lauer were "unlawfully intercepted," 18 U.S.C. § 2518(10)(a)(i), and that suppression is required.

The decision of the District Court is affirmed.

ENGEL, Circuit Judge (concurring in part and dissenting in part).

While I agree that the district court properly suppressed the wiretap evidence as to defendants Donovan, Robbins and Buzzacco for the reasons stated in the majority opinion, I respectfully dissent from so much thereof as affirms the suppression of the wiretap evidence against defendants Merlo and Lauer because of violation of 18 U.S.C. § 2518(8)(d). I would reverse and remand for reconsideration in the light of United States v. Giordano, 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974); United States v. Chavez, 416 U.S. 562, 94 S.Ct. 1849, 40 L.Ed.2d 380 (1974) and certain guidelines which I believe this court should establish in the interpretation of the inventory notice provisions of the statute.

### The Factual Background

Merlo and Lauer were not named in the wiretap applications, and their identity was not known at the time application for the interception was made on November 28, 1972, or when a continuation was approved on December 26, 1972. According to the testimony of Special Attorney Edwin J. Gale, twelve telephone conversations placed from the apartment under surveillance and received by Merlo and Lauer were intercepted between December 9, 1972 and January 3, 1973. On January 13, 1973, pursuant to a search warrant, a search was conducted by the FBI of the premises at 21 Olive Street, Akron, Ohio in the presence of both defendants. Evidence was seized as a result of the search and inventories thereof were filed and served, at least upon Merlo. Statements made by Merlo and Lauer at that time indicated that they had answered telephones located in the Olive Street apartment and that Merlo had employed Lauer as a phone man.

The defendants assert in their brief that "the contents of these intercepted communications (phone calls from the telephones under surveillance to Merlo and Lauer) were submitted by the government as probable cause for a search of the defendant's apartment on January 13, 1973." This assertion by defendants is not supported by the record, is denied by the government, and is not a fact found by the trial court. On the contrary, while the activities of Merlo and Lauer were unquestionably known to federal authorities from some time prior to January 13, 1973, the only evidence on the record indicating the date when the conclusion was reached that it was Merlo and Lauer who were parties to the twelve interceptions comes from the testimony of Special Attorney Gale, who placed the time as "late summer of 1973. Perhaps late August."

No inventory notice was ever served on either defendant. A sealed indictment naming both Merlo and Lauer as defendants was filed on November 1, 1973 and was unsealed November 6. On December 17, 1973 transcripts of the twelve interceptions were furnished by the government in response to a request by defendants. On January 17, 1973 District Judge Robert Krupansky sup-

pressed the evidence, and on the following day entered an order severing the trials of Merlo, Lauer and the other appellees herein from that of the remainder of the defendants, thus paving the way for this interlocutory appeal upon certification by the government pursuant to 18 U.S.C. § 3731.

### Suppression Under the Statute

The appeal from the district court's suppression of the wiretap evidence presents the issue of whether failure to serve upon those defendants post-interception inventory notice violates the provisions of 18 U.S.C. § 2518(8)(d), and if so, whether the violation requires suppression under 18 U.S.C. § 2518(10)(a). In the words of United States v. Kahn, 415 U.S. 143, 94 S.Ct. 977, 39 L.Ed.2d 225 (1974), " . . . the starting point, as in all statutory construction, is the precise wording chosen by Congress in enacting Title III." 415 U.S. at 151, 94 S.Ct. at 982.

Subsection (8)(d) of Section 2518 provides that the issuing judge "shall cause to be served, on the persons named in the order or the application, and such other parties to intercepted communications as the judge may determine in his discretion that is in the interest of justice, an inventory . . .." Under the statute, therefore, it was within the discretion of the judge to cause an inventory to be served upon Merlo and Lauer as "such other parties to intercepted communications." Since the judge will have no independent information and must depend upon the government to disclose the names of such other persons, I agree with the majority that the government, therefore, should have a duty on its own initiative to disclose to the judge the names of such persons known to it, even though such duty is not spelled out in the statute. See United States v. Chun, 503 F.2d 533, 540 (9th Cir. 1974). I depart from the majority, however, when it holds in effect that a violation of the judicially created duty calls for suppression without regard to whether it was the result of a deliberate flouting of

the statute, United States v. Eastman, 465 F.2d 1057 (3rd Cir. 1972) or an inadvertent error, United States v. Wolk, 466 F.2d 1143 (8th Cir. 1972), or whether there was actual prejudice to the defendants by reason thereof. Such a construction of the statute, in my view, goes well beyond United States v. Chun, *supra*, runs counter to standards for suppression set forth in *Giordano* and *Chavez*, and is similar to the overly restrictive approach to statutory interpretation which was rejected in United States v. Kahn, *supra*.

*Chavez* and *Giordano* set out the standards for suppression under 18 U.S.C. § 2518(10)(a)(i). As noted by the court in *Chavez*, *Giordano* "did not go so far as to suggest that every failure to comply fully with any requirement provided in Title III would render the interception of wire or oral communications 'unlawful'." *Chavez*, *supra*, 416 U.S. at 574, 575, 94 S.Ct. at 1856. Rather, the court in *Giordano* noted: " . . . Congress intended to require suppression where there is a failure to satisfy any of those statutory requirements that directly and substantially implement the congressional intention to *limit the use* of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device." (emphasis added) *Giordano*, *supra*, 416 U.S. at 527, 94 S.Ct. at 1832.

In considering whether we should apply the suppression provisions of 18 U.S.C. § 2518(10)(a)(i) to violations of the post-interception inventory notice provisions of 18 U.S.C. § 2518(8)(d), it is necessary to recognize that since the interception has already occurred, the service of inventory afterward has little, if anything, to do with deterring improper initial resort to the procedure. The language " 'unlawfully intercepted' must be 'stretched' " to include failures of conditions subsequent to a valid authorization and execution, *Chun*, *supra*, 503 F.2d at 542, n.18. It is, therefore, difficult enough for me to conclude that the inventory notice provisions were intended to play a "central role" in "limiting the use of intercept procedures" where the

statute specifically requires notice; it is even more difficult where notice is made discretionary and the alleged violation is not even mentioned in the statute. Nevertheless, a judicial interpretation of the statute which imposes a duty on the government to disclose to the judge the names of persons later identified as parties to intercepted communications is reasonable, consistent with the needs of the judge if he is to exercise his statutory discretion and in keeping with the spirit and intent of the Act. 1968 U.S. Code Cong. & Admin.News, p. 2184. See also Commentary to Standard No. 5.15, tentative draft of American Bar Association Minimum Standards for Criminal Justice for Electronic Surveillances, proposed June 1968, at pages 161–162.

I agree that if the duty created is to have any meaning, it is reasonable to attach consequences to its violation which discourage abuse and protect against resulting injury. I do not agree that the language of the statute compels suppression as the invariable judicial vehicle of enforcement. I would limit suppression to those instances in which the government's violation was shown to be deliberate or where, if not deliberate, there is a showing of actual prejudice which cannot be cured by less drastic remedies such as compelling later disclosure or by permitting, in the words of *Chun*, "a reasonable opportunity to prepare an adequate response to the evidence which has been derived from the interception." *Chun, supra*, 503 F.2d at 538.

The facts in this case, and indeed in most reported cases involving widespread organized crime, readily illustrate the complexity of investigations which frequently involve not only different investigative agencies of the federal government, but state law enforcement agencies as well. See e. g., United States v. Cirillo, 499 F.2d 872 (2nd Cir. 1974), cert. denied 419 U.S. 1056, 95 S.Ct. 638, 42 L.Ed.2d 653. The knowledge of one law enforcement officer, or of even a single agency, can rarely be expected to encompass the knowledge of the whole. The identification of parties to telephone con-

versations by voice is difficult at best. It is infinitely more difficult when the parties are guarded in their remarks, or refer to one another by code name or nickname. Unless the Constitution or the express language of the statute commands otherwise, I believe we are obliged to construe the governmental duty consistently with the dual objectives of the Act:

"To be sure, Congress was concerned with protecting individual privacy when it enacted this statute. But it is also clear that Congress intended to authorize electronic surveillance as a weapon against the operations of organized crime." (Footnote omitted) United States v. Kahn, *supra*, 415 U.S. at 151, 94 S.Ct. at 982.

If the foregoing guidelines are applied here, the decision of the district court cannot stand upon the record made and upon the limited findings of the district court.

There is nothing in the record here to suggest that the failure to notify the issuing judge of the names of Merlo and Lauer was anything but inadvertent. Notice was given not only to 37 persons by court order of February 21, 1973, but to two additional persons on September 11, 1973. This itself is a strong indication that the government was not indifferent to its obligations to make later disclosure. No tactical advantage to the government is even suggested in view of the widespread disclosure to others allegedly involved in the conspiracy.

Likewise, I view any possibility of actual prejudice highly doubtful upon the record here. "The majority concludes, erroneously I think, that 'This finding demonstrates to our satisfaction that the District Court has considered and decided the issue of actual notice' ". Actually the record shows only that the inventory notice was never sent them, and the district court finding is limited to the observation of "the government's admission that defendants Merlo and Lauer were not served with inventories pursuant to the Act or otherwise notified that they have been intercepted". I do not con-

clude from this finding, however, that the district judge found, or the facts revealed, that the defendants had no prior actual knowledge whatever of the interceptions. Thirty-nine of the alleged participants had already been formally notified. Because of the January search of their apartment, Merlo and Lauer already knew in the most concrete terms that their activities, and in particular telephone activities, were under FBI scrutiny. They may not have had direct or indirect notice from the government, but it challenges credulity to conclude therefrom that they did not have some actual knowledge of the interceptions.

The duty to notify Merlo and Lauer arose in late August when, according to Gale, their identity was first known. They were then, in the discretion of the judge, entitled to an inventory, including notice of the facts and dates described in 18 U.S.C. § 2518(8)(d)(1), (2) and (3). This information does not, however, necessarily include either transcripts of the tapes themselves or even the dates or particulars of individual conversations. As indicated earlier, indictment followed about two months later, and full disclosure of the transcripts themselves some six weeks after that. Further, the defendants were still entitled to protection of the ten-day rule of § 2518(9). Since this appeal is itself interlocutory, they cannot claim that they have been put to trial without "reasonable opportunity to prepare an adequate response". *Chun, supra,* 503 F.2d at 538. They are, therefore, in a far more advantageous position than was defendant Venuetucci in United States v. Cirillo, *supra.* There Venuetucci did not actually learn of the interceptions of tapes involving his own conversations until the day they were introduced at his trial. The interceptions had been procured under the New York wiretap law which had been enacted following Berger v. New York, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967). Nevertheless, the Second Circuit, while agreeing that the government should have produced the tapes earlier, found their admission not to be reversible error where failure to make earlier disclosure

was the result of oversight, no continuance was sought, and the defendant's claims of actual prejudice bordered on the frivolous. United States v. Cirillo, *supra,* 499 F.2d at 882–883.

### Conclusion

This area of law is both novel and difficult and neither the trial court nor counsel have been furnished with much appellate guidance in working out the very real problems which arise under the statute. For that reason, I would vacate the order suppressing the wiretap evidence relating to Merlo and Lauer, and remand to the district court for reconsideration in the light of the foregoing observations, leaving it to the district judge to determine whether, in connection therewith, any further evidentiary hearing may also be required.