**UNITED STATES of America, Plaintiff,**

**v.**

**Franklin Delano JENKINS, et al., Defendants.**

**Crim.A. No. CR–88–0008–BG(M).**

United States District Court, W.D. Kentucky.

Sept. 11, 1990.

Randy Ream and John L. Caudill, Asst. U.S. Attys., W.D.Ky., Louisville, Ky., for U.S.

William Ward Allen, Robert D. Simmons, Bowling Green, Ky., for defendant Franklin Delano Jenkins.

Jon William Goodman, Munfordville, Ky., for defendant Jimmie Wright.

David F. Broderick and Steven Thornton, Cole, Broderick, Minton, Moore and Thornton, Bowling Green, Ky., for defendant Dickie White.

Robert Bradley Coffman, Coffman and Beck, Bowling Green, Ky., for defendant Damon Kinser.

William Skaggs, Bowling Green, Ky., for defendant Dwight Willard Britt.

Robert E. Harrison, Bowling Green, Ky., for defendant Donnie Rich.

Lela Shepherd, Bowling Green, Ky., for defendant Thomas Gilmer.

John Donnelly, Bowling Green, Ky., for defendant Joe Trice.

## MEMORANDUM AND ORDER

MEREDITH, District Judge.

This matter is before the Court on the motions of the defendants, Franklin Delano Jenkins, James Edward Wright, Dickie

White, Damon L. Kinser, Dwight Willard Britt, Donnie Rich, Thomas Gilmer, Jr., and Joe Trice, to suppress either the tapes offered by Agent Shiner or, in the alternative, to suppress all evidence derived under the intercept order for violation of Title 18, U.S.C., Section 2518(8)(a) pursuant to Title 18, U.S.C., Section 2518(10)(a). Section 2518(10)(a) provides:

"Any aggrieved person in any trial, hearing, or proceeding in or before any court ... may move to suppress the contents of any wire or oral communication intercepted pursuant to this chapter, or evidence derived therefrom, on the grounds that—

(i) the communication was unlawfully intercepted; ... or

(ii) the interception was not made in conformity with the order of authorization or approval."

The intercept order in the case at bar parrots the language of Section 2518(5) which requires "[e]very order and extension thereof shall ... be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter."

▮ Section 2518(8)(a) states that the "contents of any wire, oral, or electronic communication intercepted by any means authorized by this chapter shall, if possible, be recorded on tape or wire or other comparable device."

Agent Shiner testified that at times he could hear without the recording device being activated while conducting the interception. The evidence reflects that when Agent Shiner would put the headphones on sometimes he could hear without the recording device on. The defendants argue that Shiner's testimony constitutes a violation of Section 2518(8)(a) and Section 2518(5) and thus requires suppression under Section 2518(10).

In 1976, the Eighth Circuit Court of Appeals rejected a motion to suppress recorded conversations made pursuant to Title III where it was determined that the agents in conducting the wiretap failed to record all communications to which they listened. Spot-checks of conversations were not recorded.

"Section 2518(8)(a) requires, *if possible*, that the contents of any intercepted conversations be recorded on tape or wire or other comparable device. The Senate Report states that any interception must be recorded *if practicable* ... The Report indicates that the purpose of [Section] 2518(8)(a) is to ensure the admissibility of intercepted communications at trial ... Even assuming, without deciding, that [Section] 2518(8)(a) requires even innocent conversations to be recorded in spot-checking situations, we fail to see how Daly was prejudiced by the failure to record. Defendant does not allege, and has not shown, that any incriminating conversation were recorded out of context. The minimization requirement was met. Suppression is not required under these circumstances."

*United States v. Daly*, 535 F.2d 434, 442–443 (8th Cir.1976). The Fourth Circuit, citing *Daly*, held in *United States v. Clerkley*, 556 F.2d 709 (4th Cir.1977) that wholesale monitoring of all conversations without commensurate taping of those conversations was not grounds for suppression. The agents in *Clerkley* were investigating a widespread gambling operation in which three defendants were partners in the control of the operation. The agents monitored all of the conversations that took place in one of the partners' offices when any one of the three were present. The defendants moved to suppress the taped conversations on the grounds that all conversations were monitored but only certain conversations were taped. The *Clerkley* court reasoned that the unrecorded interceptions did not constitute "unlawfully intercepted" communications under Section 2518(10) because the violation did not substantially impinge upon Fourth Amendment values. *Clerkley*, 556 F.2d at 718–719.

"The recording provision, contained in [Section] 2518(8)(a), was enacted to serve an evidentiary function. Congress apparently realized that testimony by monitoring agents of what they hear would be open to attack on grounds of hearsay,

failure of recollection and bias. Tape recordings, on the other hand, would be almost irrefutable if their authenticity and physical integrity were guaranteed. Accordingly, intercepted communications were to be recorded, if at all possible, and introduced in their recorded form ... In sum, we do not think that the recording provision was intended to limit the use of wiretapping so as to preserve rights of privacy. Recordation is required to insure that the product of surveillance will be received under traditional rules of evidence. There is no indication that [Section] 2518(8)(a) was intended to or could fulfill the same function as exhaustion of investigatory procedures, judicial authorization and review, and minimization in protecting an individual's right to privacy. It follows that a failure to record, though admittedly a violation of the statute, does not lead to suppression and reversal of the convictions."

*Clerkley*, 556 F.2d at 719. The *Clerkley* and *Daly* opinions have been cited by several District Courts in recent years. See *United States v. DePalma*, 461 F.Supp. 800 (S.D.N.Y.1978) (agents failed to record conversations but the court found the transgressions to be de minimis in light of the extensive records of monitored conversation and the spontaneity of failures to record); *United States v. Costello*, 610 F.Supp. 1450 (N.D.Ill.1985) (agents listening to empty office did not constitute an "oral communication" and there was no evidence that any conversations were lost); *United States v. Gerena*, 695 F.Supp. 1379 (D.Conn.1985) (agents failed to record while doing spot-checks of conversations did not warrant suppression as Section 2518(8)(a) serves an evidentiary function); *United States v. Paredes–Moya*, 722 F.Supp. 1402 (N.D.Tex.1989) (agents' failure to record pager interception not grounds for suppression as Section 2518(8)(a) is evidentiary in nature). Though the Sixth Circuit Court of Appeals has not ruled on this specific issue, the Court is confident that the reasoning in *Clerkley* sufficiently clarifies the purpose and function of Section 2518(8)(a).

The value of subsection (8)(a) is to provide a defendant with a tangible piece of evidence, i.e. a taped conversation, to contest at trial rather than the mere recollection of a monitoring agent. Conversations that are to be used against the defendant must be recorded so that the best evidence is presented for scrutiny. Should the United States attempt to offer intercepted conversations that were not recorded, Section 2518(8)(a) would allow the defendants to move for suppression. The defendants in the present action are attempting to suppress all intercepted conversation despite the fact that all the conversations offered for evidence are recorded. Stretching the intent and function of Section 2518(8)(a) to this extent is not required by the statute nor by the caselaw that has interpreted the statute. Not only is the reasoning of *Clerkley* convincing, the facts of *Clerkley* present a much more severe case of listening to unrecorded conversations than the case at hand. In *Clerkley*, 80% of the conversations listened to were not recorded. In the case at bar, at most, Agent Shiner testified that he might have heard a portion of a conversation without recording the conversation. Furthermore, the Court notes that more latitude is given in the use of a bugging device as opposed to a telephone tap. In the case sub judice, a bugging device was used rather than a telephone tap. The Court concludes that the facts of this case certainly do not warrant the severe remedy espoused by the defendants.

In oral argument on this issue, defendant Britt directed this Court's attention to the Sixth Circuit opinion in *United States v. Donovan*, 513 F.2d 337 (6th Cir.1975), overruled *United States v. Donovan*, 429 U.S. 413, 97 S.Ct. 658, 50 L.Ed.2d 652 (1977). The Court has reviewed the opinion but is not swayed in light of the rejection of that ruling by the United States Supreme Court.

The defendants also argue that Agent Shiner's statement that he could hear when he put the earphones on without recording conversations violates the requirement of minimization in Section 2518(5). The requirements of minimization

are not as restrictive as the defendants would have this Court believe.

"The statute does not forbid the interception of all nonrelevant conversations, but rather instructs the agents to conduct the surveillance in such a manner as to 'minimize' the interception of such conversations. Whether the agents have in fact conducted the wiretap in such a manner will depend on the facts and circumstances of each case."

*Scott v. United States*, 436 U.S. 128, 98 S.Ct. 1717, 1724, 56 L.Ed.2d 168 (1978). As the United States asserts in their brief, Agent Shiner was given instruction on minimization. Furthermore, there is no evidence that Agent Shiner deliberately violated the minimization requirement by "repeated, unreasonable interceptions." *United States v. Costello*, 610 F.Supp. 1450, 1477 (N.D.Ill.1985). Agent Shiner merely admitted that it was possible to hear without recording but he does not state that he listened indiscriminately. The Court is not convinced that Agent Shiner's inadvertence constitutes a breach of the statute or of the underlying standards which protect private conversations. For these reasons the Court will deny the defendants' motion to suppress Agent Shiner's intercepted conversation and will deny the defendants' motion to suppress all taped conversations.

In addition, this Court has now heard a considerable amount of testimony from the Case Agent, Special Agent John Olney, and several other F.B.I. agents about the procedure utilized in conducting the listening. It appears to this Court that the Agents were most thorough in the manner in which they approached the Court-ordered intercept. First, there was a minimization conference with AUSA Randy Ream explaining the precise procedure to be used. Almost all the agents to this point in time have testified that they only listened to the intercept when the tape was running. The one or two who even knew you could listen without recording only did it very rarely at most. They really didn't need to listen constantly since the Kentucky State Police were watching Hilltopper Billiards around the clock and calling them when a target entered the premises.

In short, most of the agents testified under oath that they either didn't know they could listen without recording, or if they did know, they did not do it anyway. Thus,

IT IS HEREBY ORDERED that the motion of the defendants to suppress taped conversations or in the alternative to suppress the intercepted conversations offered by Agent Shiner be and hereby is OVERRULED.